UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CENTURY 21 REAL ESTATE LLC, F/K/A
CENTURY 21 REAL ESTATE CORPORATION,

        Plaintiffs,

  -against-

PARAMOUNT HOME SALES, INC. and
JEFFREY STERN,

        Defendants.
------------------------------------------------------------X

**AMENDED**
**REPORT AND**
**RECOMMENDATION**
06-CV-2861 (FB) (JMA)

A P P E A R A N C E S:

Daniel K. Winters, Esq.
Zoe F. Feinberg, Esq.
Reed Smith, LLP
599 Lexington Avenue
New York, New York 10022
*Attorneys for Plaintiff*

**AZRACK, United States Magistrate Judge:**

  By order dated September 20, 2006, the above referenced action was referred to me, pursuant to 28 U.S.C. § 636(b)(1)(B), by the Honorable Frederic Block for a report and recommendation to determine the scope of relief to be awarded under the Lanham Act, 15 U.S.C. § 1116 and 1117, and any additional damages.

  For the reasons set forth below, I recommend that judgment be entered against defendants, jointly and severally, in the amount of $91,251.03, reflecting $31,285.71 in trebled Lanham Act damages, $39,688.36 in breach of contract damages, as well as $20,276.96 in attorneys' fees and costs.

1

**I. BACKGROUND**

Plaintiff Century 21 Real Estate LLP ("Century 21") is a large real estate brokerage franchise system and a widely known provider of such services. (Dkt. No. 30: Affidavit of Debbie Iuliano, dated Feb. 6, 2007 ("Iuliano Aff.") ¶ 3.) Century 21's trademarks, service marks and logos are on the principal register of the United States Patent and Trademark Office. (Id.) Century 21 has the exclusive right to use and license the Century 21 marks and derivations thereof, as well as the distinctive Century 21 System, which provides real estate brokerage services to the public under the Century 21 name. (Id.)

Defendant Paramount Home Sales, Inc. ("Paramount") entered into a franchise agreement ("Franchise Agreement") with plaintiff for the operation of a Century 21 real estate brokerage office to be located in Brooklyn, New York. (Id. ¶ 4.) Pursuant to the Franchise Agreement, defendant was to operate a Century 21 real estate brokerage office for ten years commencing March 1, 1999. (Id.) During this period, defendant was permitted to use Century 21 marks in association with the operation of the franchise. (Id.) Under the terms of the Franchise Agreement, Paramount was required to pay Century 21 a six percent royalty fee, plus a two percent National Advertising Fund ("NAF") contribution, subject to certain minimums and maximums, based on the gross revenue received from any transaction. (Id. ¶ 6.) Together, these fees are called "membership fees." (Id.) The Franchise Agreement also laid out Paramount's obligations in the event of the termination of the Franchise Agreement. (Id. ¶ 7.)

Defendant Stern executed the Franchise Agreement as Paramount's "Responsible Broker." (Dkt. No. 1: Franchise Agreement at 41, attached to Compl. as Ex. A.) In addition, Stern executed a Guaranty of Payment and Performance (the "Guaranty"), in which Stern personally guaranteed the

payment of all franchise fees, NAF fees, minimum service fees, and any other fees, including attorneys' fees. (Id. at 44; Iuliano Aff. ¶ 6.)

Paramount failed to satisfy its obligations under the Franchise Agreement. (Compl. ¶ 25.) Specifically, Paramount failed to report transactions and was delinquent in the payment of fees. (Id.) This, and Paramount's failure to cooperate or cure the delinquencies, constituted a material breach of the Franchise Agreement. (Id. ¶ 26.) Thereafter, on January 24, 2006, Century 21 terminated the Franchise Agreement. (Id. ¶ 27.)

Paramount continued to use Century 21 marks after the termination and failed to completely de-identify its franchise, as required by the Franchise Agreement. (Id.) Paramount and Stern continued to hold themselves out as a Century 21 franchise through advertisements on the internet, websites promoting real estate services and through postings in the lobby of the Paramount office building. (Id. ¶ 32.) This conduct continued despite demands from Century 21 to cease and desist. (Id.)

On June 7, 2006, Century 21 filed the instant action. On June 23, 2006, Judge Block issued a preliminary injunction enjoining defendants from further infringement. (Dkt. No. 9: Preliminary Injunction Order.) On September 18, 2006, the Clerk of Court entered a default against defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Dkt. No. 16: Clerk's Entry of Default.) On October 6, 2006, Judge Block granted Century 21's motion for a default judgment. Century 21 Real Estate v. Paramount Home Sales, Inc, No. 06 CV 2862, 2006 WL 2883391, at *2 (E.D.N.Y. Oct. 6, 2006). (Dkt. No. 25: Memorandum and Order). At that time, Judge Block referred the matter to me for determination of the relief and damages to be awarded. (Id.) On November 7, 2006, the Court entered an electronic order which indicated that defendants had

complied with the Court's June 23, 2006 order to remove all infringing material.

## II. DISCUSSION

### A. Liability

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). As Judge Block found in his order granting default judgment to plaintiff, the allegations in the instant complaint are sufficient to establish violations of the Lanham Act and breach of contract. Century 21 Real Estate v. Paramount Home Sales, Inc., No. 06 CV 2862, 2006 WL 2883391, at *1-2 (E.D.N.Y. Oct. 6, 2006).

### B. Monetary Damages

Although the allegations of a complaint pertaining to liability are deemed true upon defendants' default, allegations pertaining to damages are not. Greyhound Exhibitgroup, Inc., 973 F.2d at 158. Damages "must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." Id. Yet, Rule "55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court." Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989).

In the instant case, a hearing is not necessary. Both parties were given an opportunity to request a hearing or to submit documentation as to damages. (See Dkt. No. 29: Scheduling Order.) No hearing was requested. Century 21's uncontested submissions provide a basis for awarding damages.

### i. Lanham Act

Section 35(a) of the Lanham Act governs claims for monetary relief and attorneys' fees made

by plaintiffs who have successfully established a trademark violation. 15 U.S.C. § 1117. Under the statute, plaintiff is entitled, subject to the principles of equity, to recover: (1) defendants' profits; (2) any damages sustained by plaintiff; and (3) the costs of the action. 15 U.S.C. § 1117(a). In addition, in "exceptional cases," the Court may award attorneys' fees. Id. "[T]he statute's invocation of equitable principles as guideposts in the assessment of monetary relief vests the district court with some degree of discretion in shaping that relief." George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992) (citing 15 U.S.C. § 1117(a) (both damage and profit awards may be assessed "according to the circumstances of the case")).

Although the Court has discretion in awarding monetary relief, "that discretion must operate within legally defined parameters." Id. Under the statute, in order for the Court to assess profits, plaintiff must prove defendants' sales. 15 U.S.C. § 1117(a). In the instant case, because defendants have defaulted and failed to provide any discovery, this information is not available to plaintiff. (Iuliano Aff. ¶ 22.) As an alternative to proving defendants' actual sales, plaintiff suggests the Court estimate plaintiff's damages by estimating its lost profits. (Id. ¶ 23.) To do this, plaintiff proposes calculating the average membership fees paid by defendants under the Franchise Agreement for the eighty-two months prior to the termination. (Id.) During that time, from March 1, 1999 through January 24, 2006, defendants paid an average of $1,158.73 in membership fees per month to plaintiff.[1] (Id.) Plaintiff proposes multiplying this average membership fee by the infringement period in order to calculate plaintiff's estimated lost profits. (Id. ¶ 24.) The infringement period lasted from January 24, 2006 through October 30, 2006. (Id.) Multiplying this nine month period

---

[1] Plaintiff calculated this value in the following way: for the period of March 1, 1999 (commencement of agreement) through January 24, 2006 (date of termination), Paramount paid a total of $95,908.11 in membership fees. (Id. ¶ 23.) Dividing $95,908.11 by 82.77 months gives an average of $1,158.73 per month. (Id.)

5

by the average membership fee equals $10,428.57 in § 1117(a) damages.

Although this method of calculating damages is speculative, I find it to be reasonable and appropriate. The amount requested is not excessive and it is defendants who are to blame for the inability to calculate an exact figure. See, e.g., Phat Fashions LLC v. Blue Max Corp., No. 01 CV 3933, 2005 WL 1221838, at *2 (S.D.N.Y. May 2, 2005) ("In the absence of any information . . . on costs, and because [defendant] has not cooperated in discovery, the Court finds that . . . estimated sales are a fair indicator of profits.").

Moreover, 15 U.S.C. § 1117(c) provides for statutory damages as "an alternative to traditional awards based on actual losses." Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999). Under the statute, a plaintiff may elect to pursue statutory rather than actual damages. 15 U.S.C. § 1117(c).[2] Plaintiff has not elected to do so here, but clearly could have. The lack of information regarding defendants' sales and profits make statutory damages particularly appropriate for these kinds of default cases. See Nike, Inc. v. Top Brand Co., Ltd., No. 00 CV 8179, 2006 WL 2884437, at *2 (S.D.N.Y. Oct. 6, 2006); Phillip Morris USA Inc. v. Marlboro Express, No. 03 CV 1161, 2005 WL 2076921, at *8 (E.D.N.Y. Aug. 26, 2005) ("Several courts have found statutory damages especially appropriate in default judgment cases due to infringer nondisclosure.") (citations omitted). Although plaintiff has not elected to do so, that § 1117(c) could be invoked supports the finding of plaintiff's proposed damages as appropriate because the provision allows for a great deal of judicial discretion in awarding damages.

---

[2] Statutory damages may be awarded in the amount of: "(1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 17 U.S.C. § 1117(c).

Plaintiff requests a trebling of these § 1117 damages. (Id. ¶ 25.) Section 1117 provides for an award of treble damages under subsections (a) and (b). See 15 U.S.C. § 1117(a)-(b). Plaintiff does not indicate which subsection it contends should apply. Under § 1117(a), courts have discretion to increase the award to three times actual damages or to otherwise adjust the award if the amount of the recovery based on profits is either inadequate or excessive, but only to "constitute compensation and not a penalty." 15 U.S.C. § 1117(a). On the other hand, subsection (b) mandates the trebling of § 1117(a) damages upon a finding of willfulness, absent extenuating circumstances, "to deter potential counterfeiters." 15 U.S.C. § 1117(b); Sara Lee Corp., 36 F. Supp. 2d at 165. As previously noted, a default judgment has been entered against defendants, which deems them to be willful infringers. Malletier v. Whenu.Com, Inc., No. 05 CV 1325, 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007). Thus, treble damages are appropriate under § 1117(b) and I recommend that plaintiff be awarded $31,285.71 in damages for infringement.

## ii. Breach of Contract: Lost Future Profits

Plaintiff also requests damages, pursuant to the parties' Franchise Agreement, in the form of lost future profits. Paragraph 19 of the Franchise Agreement specifically provides that, in the event of a termination of the Franchise Agreement, Paramount shall become obliged to pay lost profits to plaintiff. (Iuliano Aff. ¶ 26.) Under the Franchise Agreement, lost future profits consist of all amounts which Paramount would have paid plaintiff as membership fees from the date of early termination through the expiration date of the contract. (Id.) The Franchise Agreement was set to expire on March 1, 2009. (Id. ¶ 4.)

The Franchise Agreement provides that lost future profits shall be calculated by first determining the average monthly membership fees paid by Paramount to plaintiff from the

7

commencement date of the Franchise Agreement through the date of early termination. (Id.) That amount is $1,158.73.[3] (Id.) Multiplying this average amount by the actual number of months (and any fraction thereof) remaining between the date of early termination and the expiration date of the Franchise Agreement gives lost future profits. (Id.) Here, 37.23 months remained on the contract at the time of termination. (Id. ¶ 27.) Thus, the present value of plaintiff's lost future profits is $43,139.52. The Franchise Agreement provided that this present value be discounted at a rate of 8% in order to calculate the actual lost profits that plaintiff would be entitled to in the event of a breach. (Id. ¶ 26.) Therefore, I recommend that plaintiff be awarded breach of contract damages of $39,688.36.

**B. Attorneys' Fees and Costs**

The Lanham Act authorizes the award of attorneys' fees to prevailing parties in "exceptional cases," 15 U.S.C. § 1117(a), which has been understood by the Second Circuit to mean instances of "fraud or bad faith," or "willful infringement." Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 221 (2d Cir. 2003) (internal citations omitted). Attorneys' fees may also be awarded under 15 U.S.C. § 1117(b) when there has been willful infringement.

The allegations in the complaint, along with defendants' default, are sufficient to justify the award of attorneys' fees to plaintiff here. See, e.g., Guardian Life Ins. Co. of America v. Does 1-10, No. 05 CV 6606, 2006 WL 3008078, at *2 (S.D.N.Y. Oct. 23, 2006) (citing Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *7 (S.D.N.Y. Mar. 21, 2006) ("defendant's infringement has been deemed willful by virtue of its default in this action," thus justifying awarding reasonable attorneys' fees under 15 U.S.C. § 1117(a)); Phat Fashions LLC v.

---

[3] See supra note 1.

8

Blue Max Corp., No. 01 CV 3933, 2005 WL 1221838, at *2 (S.D.N.Y. May 2, 2005) (Defendant "has failed to present any evidence [on the inquest] to contradict the assertions in the complaint [of deliberate and willful infringement], and it has used marks with similarities to plaintiff's mark. I find that its willful conduct justifies an award of attorney's fees.")). Under the Lanham Act, plaintiff is also entitled to costs. See 15 U.S.C. § 1117(a) ("the plaintiff shall be entitled . . . to recover . . . the costs of the action").

Attorneys' fees and costs are also warranted pursuant to the parties' Franchise Agreement. Paragraph 20 of the Franchise Agreement provides that if a non-defaulting party incurs attorneys' fees in order to enforce the terms and conditions of the Franchise Agreement, the party not in default is entitled to attorneys' fees and costs. (Iuliano Aff. ¶ 28.) Moreover, the Franchise Agreement provides that, should legal action be instituted in connection with the Franchise Agreement, the prevailing party shall be entitled to recover all costs and expenses, including attorneys' fees. (Id.) Under these terms, plaintiff is clearly entitled to both attorneys' fees and costs.

In support of its request for fees and costs, plaintiff originally submitted a certification with an exhibit setting forth its invoices from counsel. (Dkt. No. 32: Attorney Invoices, attached to Certification of Zoe F. Feinberg in Lieu of Inquest Hearing ("Feinberg Cert.") as Ex. A. ) These bills total $29,604.99, and include costs of $1,620.89. (Feinberg Cert. ¶ 4.) The requested attorneys' fees, $27,984.10, were for a total of 93.76 hours. This original submission cataloged the hours worked per attorney by date, but it did not include any information on the tasks performed. In order to assist the Court in assessing the reasonableness of these fees, plaintiff submitted supplemental unredacted invoices. (Dkt. No. 33: Letter regarding invoices.) In order to protect attorney-client privilege, plaintiff requested that these documents be submitted to the Court, but not

electronically filed, to which I agreed. In determining the proper fee award, I note that the amount of such award is within the Court's discretion. See Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 222 (2d Cir. 2003).

After carefully scrutinizing plaintiffs' attorneys' certification and invoices, I find that the time expenditure for this case was unreasonable. In making this determination, I considered the following factors: the fact that defendants are in default and all motions were undisputed, the attorneys' ultimate success, their efforts to secure a preliminary injunction against defendants and stop their infringement, and the activities of the case, as reflected by entries on the docket sheet. Although the hourly rates are within the normal range, considering counsel's experience, I believe a reduction in fees of one-third is appropriate. Accordingly, I recommend the amount for attorneys' fees be reduced from $27,984.10 to $18,656.07.

Plaintiff also seeks costs of $1,620.89, which encompasses "traditional" costs incurred by counsel (telephone and postage costs, court fees, subpoena service costs, online legal research, etc.). (Feinberg Cert. Ex. A.) I find these costs reasonable and recommend that they be awarded.

**C. Equitable Relief**

Plaintiff's complaint also requests equitable relief in the form of a permanent injunction and an order to compel an audit, yet these demands were not reiterated in the affidavit plaintiff submitted in lieu of an inquest hearing. (See Iuliano Aff.) The Lanham Act empowers courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). To obtain a permanent injunction, plaintiff "must demonstrate both

the likelihood of irreparable injury in the absence of such an injunction, and success on the merits." Martal Cosmetics, Ltd. v. International Beauty Exchange Inc., No. 01 CV 7595, 2007 WL 895697, at *35 (E.D.N.Y. March 22, 2007) (citing Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006)). Although plaintiff has prevailed on the merits of the case, by not addressing the issue in its inquest submissions, plaintiff has not demonstrated a likelihood of irreparable injury. Moreover, a preliminary injunction issued by Judge Block on June 23, 2006 was complied with by defendants. Finally, the compensatory damages awarded herein demonstrate that plaintiff has an adequate remedy at law. For these reasons, I recommend that equitable relief be denied.

## III. CONCLUSION

For the above reasons, I respectfully recommend that judgment be entered against defendants, jointly and severally, in the amount of $91,251.03, reflecting $31,285.71 in trebled Lanham Act damages, $39,688.36 in breach of contract damages, as well as $20,276.96 for attorneys' fees and costs. I also recommend that no equitable relief be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

SO ORDERED.

Dated: Brooklyn, New York
　　　　June 29, 2007

　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　JOAN M. AZRACK
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Copies also sent to:

Jeffrey Stern
902 East 84th Street
Brooklyn, New York 11236

Paramount Home Sales, Inc.
902 East 84th Street
Brooklyn, New York 11236

Jeffrey Stern
201 Old Country Road
Melville, New York 11747